UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAMIREZ LIMITED PARTNERSHIP,<br>N&R INVESTMENTS, LLC, and LA<br>FAMILIA RAMIREZ, INC.,<br><br>　　　　Defendants. | No. 2:15-cv-02304 JAM AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Pursuant to Local Rule 302(c)(19), this matter came before the court on May 29, 2019, for hearing on plaintiff's motion for default judgment. ECF Nos. 14, 18. Attorney Bradley Smith appeared on behalf of plaintiff. Defendants did not appear, and the motion was taken under submission. For the reasons stated below, the undersigned will recommend granting plaintiff's motion, with a reduced award of attorney's fees.

　　　　　　　　I.　　FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a level C-5 quadriplegic who cannot walk, has significant manual dexterity impairments, and uses a wheelchair and a specially equipped van for mobility. ECF No. 1. at 1-2. On November 6, 2015, plaintiff brought suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53, alleging multiple accessibility issues at the Café Delicias ("Café") located at 211 Harding Blvd.,

Roseville, California ("the Property"). ECF No. 1. The complaint named as defendants La Familia Ramirez, the business owner of the Café during the relevant period; as well as Ramirez Limited Partnership and N&R Investments, LLC, both owners of the Property during the relevant period. Id. at 2-3.

Plaintiff asserts that the Café is a facility open to the public, a place of public accommodation, and a business establishment. Id. at 4. The Café offers parking on the Property. Id. Plaintiff visited the Café in February, March, and April of 2015. Id. at 8. On each visit, plaintiff encountered the following accessibility issues. First, the parking lot did not offer a functioning and compliant accessible parking spot: the designated accessible parking space did not display a visible wheelchair logo, or the logo was faded; there was no "Minimum Fine $250" signage at the designated parking space; there was no pole or wall mounted signage displaying the wheelchair logo in the parking lot, or the signage was obscured; and there was no "No Parking" signage on the access aisle. Id. at 4-8. Second, the path of travel from the main dining area to the restroom was less than 36 inches wide, and thus not accessible by wheelchair. Id. Third, the restroom was inaccessible because it was located in a high-traffic area, the swing door leading to the restroom was less than 32 inches wide, and the restroom mirror was mounted so that its bottom edge was higher than 40 inches off the floor. Id.

A summons and complaint were served on defendants on December 2 and December 9, 2015. ECF Nos. 4-6. Plaintiff moved for entry of default as to each defendant on January 21, 2016, and the clerk entered default the next day. ECF Nos. 7-12. No further action was taken in the case until this court's show-cause order in March 2019. ECF No. 13. Thereafter, plaintiff moved for default judgment on April 3, 2019. ECF No. 14. Defendants did not respond to the motion for default judgment and have not otherwise appeared in this case.

Plaintiff moves for an entry of default judgment on all counts, seeking statutory damages of $4,000; attorney's fees and costs of $4,545; and an injunction ordering defendants to provide compliant van-accessible parking spaces, accessible paths of travel inside the Café, and an accessible restroom at the Property. ECF Nos. 14 at 2; 14.7 at 2.

////

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D.

Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

*i. Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without recourse for recovery in light of defendants' failure to respond. Accordingly, the first Eitel factor favors the entry of default judgment.

*ii. Factors Two and Three: Merits of Claims and Sufficiency of Complaint*

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

**(a) Title III of the ADA**

1. Article III Standing

For an ADA plaintiff to establish Article III standing to pursue injunctive relief, he must demonstrate a "real and immediate threat of repeated injury" in the future. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011). With respect to likelihood of future repeated injury, plaintiff can establish that "he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." Id. at 950. Alternatively, he can show that the "discriminatory architectural barriers deter him from
////

4

returning to a noncompliant accommodation," but that he would return if the barriers were removed. Id.

In the complaint, plaintiff alleges that he personally encountered the barriers at issue, and they caused him great difficulty and frustration; given its location and options, he would like to return and patronize the Café but will be deterred from visiting until defendants cure the issues. ECF No. 1 at 9, 12. The undersigned finds these allegations sufficient to support plaintiff's standing to pursue injunctive relief under the deterred-from-returning theory. See Chapman, 631 F.3d at 950.

## 2. Elements of ADA Claim

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III claim, a plaintiff must establish that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was discriminated against by the defendant because of plaintiff's disability. 42 U.S.C. § 12182(a); Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010).

With respect to existing facilities, "discrimination" includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA Accessibility Guidelines ("ADAAG")[1] establish the technical

---

[1] As required by 42 U.S.C. § 12186(b), the U.S. Attorney General has promulgated regulations to carry out the provisions of Title III. See 36 C.F.R. Part 36. Those regulations "include standards applicable to facilities" covered under 42 U.S.C. § 12182. The AG's regulations are required to be "consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board [the 'Access Board']." 42 U.S.C. § 12186(c). In turn, the Access Board "is directed to establish 'minimum guidelines and requirements for the standards issued'" under Title III of the ADA." Miller v. California Speedway Corp., 536 F.3d 1020, 1024 (9th Cir. 2008) (quoting 29 U.S.C. § 792(b)(3)(B)). The Access Board's guidelines are the "ADA Standards for Accessible Design" ("ADAAG"). "The term '1991 Standards' refers to the ADA Standards for Accessible Design, originally published on July 26, 1991, and

standards for determining whether a barrier exists. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004) (these guidelines "lay out the technical structural requirements of places of public accommodation"). If a barrier violates these standards relating to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. Chapman, 631 F.3d at 947; Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1034 (9th Cir. 2008). Removal is "readily achievable" where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

The first two elements of plaintiff's ADA claim are clearly satisfied. The complaint adequately alleges that plaintiff is disabled within the meaning of the ADA, since plaintiff "is a level C-5 quadriplegic . . . [who] cannot walk and also has significant manual dexterity impairments, . . . [and who] uses a wheelchair for mobility and has a specially equipped van." ECF No. 1 at 1; see Molski v. M.J. Cable, Inc., 481 F.3d 724, 732 (9th Cir. 2007) ("It is clear that [plaintiff], who is paraplegic, falls within that term."). Plaintiff also alleges that defendants are, or were at the time of the incidents, the real property owners and the business operator of the Café. As a restaurant, the Café falls expressly within the statutory definition of a public accommodation. See 42 U.S.C. § 12181(7)(B) (identifying restaurants as private entities that are considered public accommodations for purposes of Title III of the ADA).

With respect to the third element, plaintiff alleges several violations of the ADAAG standards, which are addressed in turn.

**Inaccessible Parking**

The first barrier the complaint identifies is the lack of a functioning and compliant van-accessible parking space at the Property. Under both the 1991 and 2010 ADAAG Standards, any business that provides parking spaces must provide accessible parking spaces conforming to the ADAAG specifications. 28 C.F.R. pt. 36, App. D ("1991 Standards"), § 4.1.2(5)(a); 36 C.F.R. pt.

---

republished as Appendix D to 28 CFR part 36." 28 C.F.R. § Pt. 36, App. A. "The term '2010 Standards' refers to the 2010 ADA Standards for Accessible Design, which consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36." Id. (the "2004 ADAAG" refers to the guidelines published at 26 C.F.R. 1191, appx. B and D (2009)).

1191, App. C & D (collectively, "2010 Standards") § 208.2.[2] Under the 1991 Standards, one in every eight accessible spaces, but not less than one, shall be designated "van accessible." 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, at least one in every six accessible parking spaces shall be a "van parking space." 2010 Standards § 208.2.4.

Plaintiff alleges that the Café offers patron parking, but there was not a "functioning and compliant van parking space." ECF No. 1 at 4. However, rather than alleging facts showing that the parking space does not comply with the ADAAG, plaintiff alleges facts showing that the parking space does not comply with the California Building Code ("CBC"), specifically, sections 11B-502.2, and sections "1129B.3" and "1129B.4." [3] See ECF No. 1 at 11. In his brief, plaintiff relies on these same sections of the CBC, and does not argue that the parking space violates the ADAAG directly. See ECF No. 14 at 9-10.

Plaintiff seems to argue—as he has in prior cases—that an "Advisory" note to 2010 Standards § 502.3.3 requires the court to use the CBC in determining whether defendants have complied with the ADA.[4] The court disagrees. Advisory notes in the 2010 Standards are *advisory*, they do not themselves establish any enforceable requirements. 28 C.F.R. part 36, subpart D § 36.406(b) ("advisory notes … contained in the 1991 Standards and 2010 Standards explain or illustrate the requirements of the rule; they do not establish enforceable requirements"); see Johnson v. 42816 Mission Blvd LLC, No. 17-CV-03040-CRB, 2018 WL 3008677, at *2 (N.D. Cal. June 15, 2018) (because the ADAAG Standards do not delegate to local authorities the issue of how to demarcate accessible parking spaces—but rather contain an advisory "warning . . . businesses that they may also have to comply with state-law requirements"—plaintiff's "attempt to premise an ADA violation on the California standard" fails); Eiden v. Home Depot USA, Inc.,

---

[2] App. C (of 36 C.F.R. pt. 1191) ("Scoping") includes "2010 Standards" §§ 101.1 to 243.1. App. D ("Technical") includes "2010 Standards" §§ 301.1 to 1019.1.
[3] There are no sections "1129B.4" or "1129B.3" in the current California Building Code. See http://www.bsc.ca.gov/Codes.aspx (last visited by the undersigned on May 30, 2019). It appears that the sections plaintiff cites have been out of date since January 1, 2014.
[4] The particular advisory note plaintiff cites relates to the proper marking of access aisles. It states that "[t]he method and color of marking are not specified by these requirements *but may be addressed by State or local laws or regulations.*" Id. ("Advisory 502.3.3 Marking") (emphasis added).

7

2006 WL 1490418 at *8 (E.D. Cal. 2006) (Karlton, J.) (rejecting use of the CBC because "compliance with the ADAAG, and not another standard, constitutes compliance with the ADA requirements"). Therefore, persons trying to comply with the ADAAG "may" look to the CBC for guidance on how to ensure that access aisles are properly marked. However, the CBC requirements are not mandatory, and failure to comply with them does not amount to a violation of the ADA. Accordingly, the court examines the complaint to determine whether it otherwise alleges a violation of the ADAAG with respect to accessible parking.

The 2010 Standards require that "[a]ccess aisles . . . be marked so as to discourage parking in them." 2010 Standards § 502.3.3. With respect to the access aisle, the complaint's only allegation is that there was no "No Parking" sign to deter parking within the aisle. ECF No. 1 at 4. However, the photos attached to plaintiff's motion for default judgment show that the access aisle was marked with painted stripes (ECF No. 14.5 at 1), which has been found sufficient. See 42816 Mission Blvd LLC, 2018 WL 3008677, at *2 ("All the DOJ regulation says is that access aisles 'shall be marked so as to discourage parking in them.' The defendant's facility marked the access aisle with stripes. This was sufficient.").

Nevertheless, the 1991 Standards also provide that "[a]ccessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility . . . ." 1991 Standards § 4.6.4. The complaint sufficiently alleges a violation of this section, as plaintiff asserts that "there was no visible International Symbol of Accessibility" and "the designated [accessible] van parking space in the parking lot serving the Café did not have the International Symbol of Accessibility." ECF No. 1 at 4, 5, 7, 11.

Thus, plaintiff has established violation of the ADAAG based on the failure to adequately mark the accessible parking space.

**Lack of Accessible Route**

The second barrier identified in the complaint is lack of an accessible path of travel between ithe Café's dining area and restroom. Both the 1991 and 2010 Standards require accessible routes with a minimum clear width of 36 inches. 2010 Standards § 403.5.1; 1991 Standards § 4.3.3. The 1991 Standards specify that "[a]t least one accessible route shall connect

8

accessible buildings, facilities, elements, and spaces that are on the same site." 1991 Standards § 4.3.2(2). Plaintiff alleges that the path of travel within the Café from the main dining area to the restroom was less than 36 inches wide, specifically referencing the space between the cashier counter and the last fixed booth in the dining area leading to the restroom. ECF No. 1 at 5-8. These allegations are sufficient to establish a violation of the ADAAG based on the lack of an accessible route from the dining area to the restroom.

**Inaccessible Restroom**

The third and final barrier plaintiff identifies is that the Café's restroom was inaccessible because the restroom doorway was too narrow, and the mirror was mounted too high. The 2010 Standards require door openings to provide a clear width of at least 32 inches, and require even greater clearance for swinging doors. 2010 Standards §§ 404.2.3, 404.2.4.1 (requiring minimum maneuvering clearance of 42-60 inches for swinging doors). The 1991 Standards also require a minimum clear opening of 32 inches for doorways, including doors to accessible bathrooms. 1991 Standards §§ 4.13.5, 4.22.2. Both the 1991 and 2010 Standards require that mirrors in lavatories must be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the floor. 2010 Standards § 603.3; 1991 Standards §§ 4.19.6, 4.22.6.

In his complaint, plaintiff alleges that the "swing door leading to the restroom" was less than 32 inches wide, and that "the restroom mirror was mounted on the wall so that its bottom edge was higher than 40 inches above the floor." ECF No. 1 at 5-8. These allegations are sufficient to establish a violation of the ADAAG based on an inaccessible restroom.

There is a presumption that removal of each of the three barriers discussed above is "readily achievable" because the regulations contemplate the necessary remedial measures. See 28 C.F.R. § 36.304(b)(4), (8), (9), (16), (18) (listing as examples of steps to remove barriers: "[r]earranging tables, chairs, vending machines, display racks, and other furniture"; "[w]idening doors"; "[i]nstalling offset hinges to widen doorways"; "[i]nstalling a full-length bathroom mirror"; and "[c]reating designated accessible parking spaces"); Molski, 481 F.3d at 730 ("[f]ederal regulations clarify which barrier removals are likely to be readily achievable and provide examples in 28 C.F.R. § 36.304").

Thus, plaintiff has established three violations of the ADA and is entitled to default judgment on this claim.

### (b) California's Unruh Civil Rights Act

Under California's Unruh Civil Rights Act, "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Because plaintiff has shown that defendants have violated Title III of the ADA—specifically by failing to properly mark their van-accessible parking space, provide an accessible route, or provide an accessible restroom—he has also shown that defendants are in violation of the Unruh Civil Rights Act. Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004) ("a violation of the ADA is, per se, a violation of the Unruh Act"). Plaintiff is therefore entitled to a default judgment on this claim as well.

*iii. Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks damages of $4,000 plus attorney's fees and costs. The complaint offers no information about the defendants' financial condition, so the court cannot tell if this is a significant amount of money to defendants. However, there is no evidence that defendants took any action after being served with the summons and complaint in order to avoid a judgment of this size. Consequently, this factor does not weigh against the entry of default judgment.

*iv. Factor Five: Possibility of Dispute Concerning Material Facts*

Here, there appear to be no material facts in dispute. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc.,

////

219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, this factor favors entry of default judgment.

*v. Factor Six: Whether Default Was Due to Excusable Neglect*

Upon review of the record, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff served defendants with the summons and complaint. ECF Nos. 4-7. Plaintiff also served defendants by mail with notice of his request for default judgment. ECF No. 14.8. Moreover, more than three years passed between the clerk's entry of defendants' default and the instant motion for default judgment, giving defendants ample time to defend themselves in this action. Thus, the record supports a conclusion that defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

*vi. Factor Seven: Policy Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendants and will make a recommendation to that effect. What remains is the determination of the terms of judgment to which plaintiff is entitled.

C. Terms of Judgment

i. *Injunctive Relief*

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Plaintiff seeks an injunction directing defendants to provide compliant van-accessible parking spaces, accessible paths of travel inside

the café, and an accessible restroom at the Property. ECF Nos. 14 at 2; 14.7 at 2. Having found that plaintiff has established that defendant violated the ADA, the undersigned will recommend that plaintiff's request for injunctive relief be granted, and defendants be ordered to properly mark the van-accessible parking space, and provide accessible routes and an accessible restroom at the Café. See Molski, 481 F.3d at 730 (plaintiffs "may obtain injunctive relief against public accommodations with architectural barriers, including "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities") (citing 42 U.S.C. § 12188(a)(2)).

### ii. Statutory Damages

Plaintiff seeks $4,000 in statutory damages pursuant to the Unruh Civil Rights Act, which provides for statutory damages of no less than $4,000 for each instance of discrimination. Cal. Civ. Code § 52(a). In his complaint and declaration supporting the motion for default judgment, plaintiff establishes at least one instance of discrimination. ECF Nos. 1, 14.4. Accordingly, plaintiff should be awarded $4,000 in statutory damages.

### iii. Attorney's Fees & Costs

Finally, plaintiff seeks an award of $4,545 in attorney's fees and costs. ECF No. 14 at 2. An award of attorney's fees is discretionary under both the ADA and the Unruh Act. Cal. Civ. Code § 52(a) (providing for statutory damages and "any attorney's fees that may be determined by the court"); Molski, 481 F.3d at 730 ("the ADA gives courts the discretion to award attorney's fees to prevailing parties") (citing 42 U.S.C. § 12205). However, "[a] prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks and citations omitted). Along with recommending that judgment be entered in plaintiff's favor on his ADA and Unruh Act claims, the undersigned will also recommend that attorney's fees and costs be awarded to plaintiff as the prevailing party in this action.

**(a) Reasonableness of Plaintiff's Fees**

Reasonable attorney's fees are calculated using the "lodestar" method, wherein the court "multipl[ies] the number of hours reasonably spent on the litigation by a reasonable hourly rate."

McCown v. City of Fontana Fire Dep't, 565 F.3d 1097, 1102 (9th Cir. 2009). The court must also determine a reasonable hourly rate. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with special emphasis on fees charged by attorneys of "comparable skill, experience, and reputation." Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992). As a general rule, the forum district represents the relevant legal community. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992); see Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) ("[G]enerally, the relevant community is the forum in which the district court sits."). The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

### 1. Reasonable Hourly Rate

Here, plaintiff requests rates of $350 per hour for partner Mark Potter; $350 per hour for experienced attorneys Russell Handy and Phyl Grace; and $275 per hour for associate Dennis Price. ECF No. 14.3 at 4-6, 10. Plaintiff provides no evidence of the prevailing market rates in this district. Based on a review of the authority in this district, the undersigned recently concluded that the reasonable hourly rates for these attorneys were: $325 per hour for Mr. Potter; $250 per hour for Ms. Grace; and $175 per hour for Mr. Price. Johnson v. Powers, No. 2:15-cv-0245 WBS AC, 2019 WL 2080173, at *2 (E.D. Cal. May 10, 2019). The undersigned finds the same rates reasonable for these attorneys in this case. Because the undersigned finds, based on counsel's declaration (ECF No. 14.3 at 5), that Mr. Handy's experience is roughly equivalent to that of Ms. Grace, a reasonable hourly rate for Mr. Handy is also $250 per hour.

### 2. Reasonable Time Expended

Plaintiff seeks compensation for 11.5 hours expended on this action. ECF No. 14.3 at 10. That amount of time falls within the range that has been found reasonable in similar ADA cases coming before this court on motions for default judgment. See Johnson v. Vuong, No. 2:14-CV-00709-KJM-DB, 2018 WL 3388456, at *7 (E.D. Cal. July 11, 2018) (finding 10.6 hours

reasonable, and collecting cases finding reasonable hours ranging from 8.8 hours to 17.3 hours), <u>report and recommendation adopted</u>, 2018 WL 3727517 (E.D. Cal. Aug. 6, 2018).  Having reviewed the billing statement provided by counsel, the undersigned finds 11.5 hours to be reasonable.

### 3. Lodestar Calculation

Multiplying the above hourly rates by each attorney's respective share of the hours expended results in a lodestar award of $3,107.50 in attorney's fees.  Plaintiff also seeks $685 for the costs of his investigator, filing fees, and service of process.  The undersigned finds these expenses reasonable and will recommend that they be awarded in full.  Thus, plaintiff is entitled to a total of $3,792.50 in attorney's fees and costs.

### III.  CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS THAT:

1. Plaintiff's April 3, 2019 motion for default judgment, ECF No. 14, heard in open court on May 29, 2019, be GRANTED;
2. The court enter judgment against defendants on the complaint's ADA claims and Unruh Civil Rights Act claim;
3. Defendants should be ordered, as authorized by 42 U.S.C. § 12188(a)(2), to:
    a. Mark the accessible parking space at Café Delicias in accordance with the ADAAG Standards;
    b. Provide an accessible route, as defined by the ADAAG Standards, from the Café dining area to the restroom; and
    c. Provide an accessible restroom in compliance with the ADAAG Standards at the Café.
4. The court award a total of $4,000 in statutory damages, as authorized by the Unruh Civil Rights Act, Cal. Civ. Code § 52(a), jointly and severally against the defendants;
5. The court award plaintiff, as the prevailing party, $3,792.50 in attorney's fees and costs from defendants; and
6. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: May 30, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE